CORNELIUS R. PARSONS, Respondent, v. SAMUEL W. JOHNSON et al., Executors, etc., Appellants.

J. and C. owned certain lands as tenants in common. A strip thereof twenty-five feet wide, running north and south across the same, was used as a way. J. and C. conveyed a portion of said lands bounded on the east by the west line of the way, the deed containing a clause giving to the grantee the right to use, in common with the grantors, "a way to be laid out on the easterly side of the premises hereby conveyed twenty-five feet in width." By the judgment in an action for partition of the remainder of the land, the portion allotted to C. was bounded on the east by the west line of the way, and that allotted to J. was bounded on the west by the same line, it being provided in the judgment that the way should be extended across the land of the width of twenty-five feet and should be "forever kept open as a common way for the common use" of J. and C., their heirs, etc. J. subsequently mortgaged the land lying east of the way, "with appurtenances." The west line of the land, as described in the mortgage, was coincident with the east line of the way, but the way was not mentioned and was not necessary for access to the mortgaged premises. This mortgage was foreclosed, the mortgaged premises sold and plaintiff acquired title thereto. Defendants' testator acquired title to the portion conveyed by J. and C., and, also, to the land covered by the way which he threatened to close up. In an action to restrain him from so doing, *held*, that the way was not an easement appurtenant to the land mortgaged, but a *quasi* non-continuous easement which did not pass by the word "appurtenances;" and that defendants' testator having become possessed of the dominant and servient tenements had the right to close up the way.

*Staple* v. *Heydon* (1 Mod., 4), *United States* v. *Appleton* (1 Sumner, 492),

*Whitney* v. *Alney* (3 Mason C. R., 280), *Doe* v. *Collins* (2 T. R., 498), *Riddle* v. *Littlefield* (53 N. H., 503), *Blaine's Lessses* v. *Chambers* (1 S. & R., 169), *Comstock* v. *Johnson* (46 N. Y., 15), *Voorhees* v. *Burchard* (55 id., 98) and *Huttemeier* v. *Albro* (18 id., 48) distinguished.

(Argued November 15, 1876; decided January 16, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts sufficiently appear in the opinion.

*W. F. Cogswell* for the appellants. The way claimed by plaintiff was a non-continuous *quasi* easement, which did not pass by the word "appurtenances." (Goddard on Easements, 70–74, 83–86; *Polden* v. *Bastard*, L. R. [1 Q. B.], 156; Washburn on Easements, 39, 40, m. p.  ; *Dodd* v. *Burchell*, 1 H. & C., 113; *Thomson* v. *Waterlow*, L. R. [6 Eq.], 36; *Langley* v. *Hammond*, L. R. [3 Exch.], 161; *Worthington* v. *Gimson*, 2 E. & E., 618; 105 Eng. C. L., 616; *Russell* v. *Harford*, L. R. [2 Eq. Cas.], 507; *Fetters* v. *Humphreys*, 4 C. E. Green [N. J. Ch.], 471; *Lampman* v. *Milks*, 21 N. Y., 505; *Pearson* v. *Spencer*, 1 B. & S., 571.)

*Geo. F. Danforth* for the respondent. Plaintiff, as owner of the land east of the roadway, was entitled to a right of way over it. (*Huttemeier* v. *Albro*, 18 N. Y., 48; *Lampman* v. *Milks*, 21 id., 505; *Curtiss* v. *Ayrault*, 47 id., 73; *Simmons* v. *Clooman*, 47 id., 3, 9; *Staples* v. *Hayden*, 6 Mod., 1–4; 3 Kent's Com. [2d ed.], 420; 1 Sum., 502; Washburn on Easements, 309.) The subsequent assignment by Jones and the deeds from his heirs could not affect plaintiff's rights. (*Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y., 61.)

EARL, J. This action was brought for the purpose of perpetually enjoining defendant's testator from erecting a wall along the east line of premises claimed to be owned by him

and adjoining the lands of the plaintiff on the west. The plaintiff claims to have a right of way over the premises which would be obstructed by the wall.

The right of way as claimed is twenty-five feet wide along the west side of plaintiff's land. Prior to the 30th day of May, 1849, Jones and Chamberlain owned, as tenants in common, the lands at the time of the commencement of this action owned by the plaintiff and the testator; and the strip of land twenty-five feet wide was part of the lands thus owned in common. The way was then used for the convenience of the owners of the lands in passing to and from certain portions thereof. On the 30th day of May, 1849, Jones and Chamberlain conveyed to the Jones Cotton Factory land bounded on the east by the west line of the way, by deed containing the following clause : " Together with the right to use in common with Jones and Chamberlain, their heirs and assigns, a way to be laid out on the easterly side of the premises hereby conveyed twenty-five feet in width." In 1850, Chamberlain commenced against Jones an action for the partition of the remainder of the land held by them in common, and the land alloted to Chamberlain in that action was bounded on the east by the west line of the way as now claimed by the plaintiff. The land allotted to Jones was bounded on the west by the same line, and .he thus became the owner in fee of the land covered by the right of way. It was provided in the judgment of partition that the land allotted to Jones should be subject to the right of way granted to the Jones Cotton mill, and to a right of way for Chamberlain, and that the way should be forever "kept open as a common way for the common use and enjoyment" of Jones and Chamberlain, their heirs and assigns. Subsequently Jones mortgaged the land lying east of the way by a description which made the west line of the land mortgaged coincident with the east line of the way; but the way was not mentioned as a boundary, and was in no way mentioned in the mortgage unless included in the word " appurtenances," the only general word used. The fee of the twenty-five feet lying west of the

mortgaged premises remained in Jones. This mortgage was foreclosed, and the plaintiff's title is under the mortgage, and he has all the land and rights which the mortgage conveyed. The testator first obtained title to the land on the west side of the way, with the right of way as previously used by the Jones Cotton mill, and by Chamberlain, and thereafter he obtained title to the fee of the strip of land covered by the way, and thus the fee and the right of way became united in him.

The plaintiff cannot claim this as a way of necessity, as it was simply convenient for him, and not neccessary for access to his land. The mortgage under which the plaintiff claims title, describes the land conveyed by definite boundaries, and conveys them with the "appurtenances." The plaintiff can therefore claim the way only upon the ground, either that it was an easement appurtenant to the land, or an incident to his land which passed to him by virtue of the grant as part of the premises granted. It was not such an easement as would pass under a conveyance of the land with appurtenances. An easement proper is a privilege which the owner of one tenement has a right to enjoy in respect to that tenement in or over the tenement of an other person. (Goddard on Eas., 2; *Tabor* v. *Bradley*, 18 N. Y., 109.) Such an easement one cannot have in land of which he owns the fee. At the time he gave the mortgage, Jones owned the fee of all the land to the west line of the way, and hence owned the strip of land covered by the way. Hence the way was not a proper easement appurtenant to his land, and it never had been; but he had the right to use it as owner of the fee. It was a way over his own land, used by him for his own convenience. It never had existed apart from the land as an easement appurtenant thereto. When there is such an easement however, it passes in a conveyance of the dominant tenement by the word "appurtenances." (Goddard on Eas., 71.) But there are rights which are mentioned in the books as *quasi* easements: (1) Where there has been an easement proper with a dominant and servient tenement, and the ownership of such

tenements has been unified. In such a case when the owner-
ship is again severed by a conveyance of the dominant tene-
ment, the way will not pass by the general word " appur-
tenances " merely, but there must be particular or general
words indicating an intention to grant the way. (Goddard on
Eas., 72, 73; *Barlow* v. *Rhodes*, 1 C. & M., 448; *Thom-
son* v. *Waterlow*, Law Rep. [6 Eq. Cas.], 36; *Fetters* v.
*Humphreys*, 19 N. J. [Eq. R.], 471. (2) There are other
*quasi* easements, as when the owner of land has constructed
a way or drain over one portion of it for the · benefit of
another portion, and there has never been a separate owner-
ship of a dominant and servient tenement. This class is
again subdivided into those which are called continuous, as a
drain or sewer which are used continuously without the inter-
vention of man and those which are called non-continuous,
as a right of way which can only be used by the intervention
of man repeated at intervals when user is desired. (Goddard
on Eas., 84; *Poedon* v. *Boston* [Law Rep.], 1 Q. B., 156;
*Fetters* v. *Humphreys, supra ; Lampman* v. *Milks*, 21 N. Y.,
505.) Such continuous *quasi* easements pass upon the con-
veyance of what will become the dominant tenement by the
word " appurtenances," and probably without that word ; but
the non-continuous easements will pass only by words sufficient
to create a new easement and annex it to the newly made
dominant tenement, and the word " appurtenances " is not suffi-
cient. (Goddard on Eas., 70–86 ; Washburne on Eas., 39, 40 ;
*Dodd* v. *Burchall*, 1 H. & C., 113; *Thomson* v. *Waterlow,
supra*; *Langley* v. *Hammond*, L. R., 3 Exch., 161; *Worth-
ington* v. *Gimson*, 105 E. C. L., 616; *Russell* v. *Harford*,
L. R. [2 Eq. Cas.], 507 ; *Fetters* v. *Humphreys, supra ; Lamp-
man* v. *Milks, supra ; Pearson* v. *Spencer*, 1 Best & S., 571.)
In *Fetters* v. *Humphreys* the rule is laid down as follows :
" The distinction between easements which are apparent and
continuous and those which are not apparent and non-continu-
ous, is completely established by adjudicated cases. The
former pass on the severance of the two tenements as appur-
tenant without the use of the word ' appurtenances,' but the

latter do not pass unless the grantor uses language in the conveyance sufficient to create the easement *de novo.*" Here the easement claimed was a *quasi* non-continuous easement which Jones used over one portion of his land for the accommodation of another portion, and when he conveyed the latter portion it did not pass as an easement by the word " appurtenances."

None of the authorities cited by the learned counsel for the plaintiff are in conflict with these views. In *Staple* v. *Heydon* (1 Mod., 4) it was agreed by the court that if one be seized of Black-acre and White-acre and use a way over White-acre from Black-acre to a mill, river, etc., and he grant Black-acre to B. with all ways, easements, etc., the grantee shall have the same conveniency that the grantor had when he had Black-acre. The rule thus laid down can be upheld upon either of two theories: 1. The terms of the grant specifying " all ways " showed the intention of the grantor. 2. There was no specific description of Black-acre. It was conveyed by that name, and hence Black-acre and all that belonged to it, and was incident thereto, and used therewith and essential to its use passed as part of the premises granted. Here the lands granted were described by definite boundaries and there was no mention of any way and no general words except the word "appurtenances."

In *United States* v. *Appleton* (1 Sumner, 492) the facts were that a block of buildings, consisting of a central building and two wings, was erected in 1808 with a piazza in front of the central building and side doors in the wings which opened on and swung over the piazza, the upper parts of which were used as windows. The center building was occupied by the United States as a custom-house, under a lease, from 1808 to July, 1816, when they purchased the same in fee and had since been in possession. The wings were occupied as stores and were sold in 1811 to other parties, the conveyance to the defendant describing the premises conveyed as " the store with all the privileges and appurtenances." It was held that the purchasers of the wings were entitled,

under the conveyances, to the use of the side doors and windows therein and passage therefrom as they were used by the occupants of the wings at the times of the conveyances. In those conveyances, as I infer, there was no description of the premises conveyed by metes and bounds. The description was general, describing the store " with the privileges and appurtenances." Under such a description every thing that belonged to the store in the condition in which it was at the time of the conveyance and essential to its convenient use, and actually used therewith, would pass as part of the premises described and granted even without the word "appurtenances." The decision was based upon the general rule of law that when a house or store is conveyed by the owner thereof with a general description describing it as a house or store, every thing then belonging to, and in use for, the house or store as an incident or appurtenance passes by the grant. If a man sells a mill which at the time has a particular stream of water flowing to it over land belonging to him, the right to the water passes as appurtenant because it is part of the thing granted under the description of the mill. In Sheppard's Touchstone (94), it is said that the grant of a messuage, or a messuage with the appurtenances, will pass the dwelling-house, barn, adjoining buildings, orchard, curtilage and garden. In Comyn's Digest, title " Grant" (C. E.) it is said " by the grant of a messuage or house, the garden, orchard, or curtilage pass." The cases here mentioned have reference to a conveyance with a general description, describing the premises as a messuage or a house. But, if the conveyance in such cases be by metes and bounds, no land except what is inclosed within the metes and bounds is conveyed.

In *Whitney* v. *Olney* (3 Mason, C. R., 280) it was held, that a devise of a mill, with appurtenances, conveyed not the buildings merely, but the land under and adjoining which is necessary to the use and actually used with it. In *Doe* v. *Collins* (2 T. R., 498), by a devise in the following words, " to Hannah Clemens, I give the house I live in and garden," certain stables and a coal pen, occupied by the

testator were held to pass together with the house. In *Press* v. *Parker* (2 Bing., 456), under a devise to R. P., " of all my freehold messuage, wherein he now lives," and to A. P. of " all my freehold messuages now in the occupancy of E." a coal cellar within the boundary of the messuages in the occupation of E., which had always been used, and was at the time of the making the will enjoyed with the premises in which R. P. lived, passed to R. P. In all such cases the question is parcel or no parcel of the premises, and the lands occupied with the house, or principal tenement mentioned pass, not as appurtenant, but as parcel of the devised or conveyed premises. To the same class of cases belong *Riddle* v. *Littlefield* (53 N. H., 503), *Blaine's Lessees* v. *Chambers* (1 S. & Rawle, 169), *Comstock* v. *Johnson* (46 N. Y., 615), *Voorhees* v. *Burchard* (55 N. Y., 98). The case of *United States* v. *Appleton*, belongs to this class of cases, and hence is not in conflict with any views herein expressed. It is said in some of the cases, in general language, that upon a conveyance of land whatever is in use for it as an incident or appurtenance, passes with it. The rule as thus announced was sufficiently correct in most of the cases in which it was laid down, but as a general rule is far from being correct, as will be seen by the illustrations furnished by the numerous cases cited.

Plaintiff's counsel laid much stress upon the case of *Huttemeier* v. *Albro* (18 N. Y., 48), as an authority in favor of his contention. There the land for which an easement in an alley-way was claimed was in the deed of conveyance described as bounded on and along the alleyway then owned by the grantors, and it was held that an easement in the alleyway was conveyed. That case furnishes no authority for the plaintiff in this. Here no mention was made in the Jones mortgage of the way. That case was decided upon the well-settled rule, that a reference to a way owned by the grantor as a boundary gives a right of way therein. (*Smyles* v. *Hastings*, 22 N. Y., 217; Washburn on Easement [marg.], 170.)

It is clear, therefore, that this way did not pass under

the mortgage as an easement in any way appurtenant to the land granted. It is equally clear that it did not pass as an incident of the premises granted, and as parcel thereof within the class of cases above cited. These lands were conveyed by precise bounds, and hence what is not included is supposed to be excluded. It was decided in *Grant* v. *Chase* (17 Mass., 443) that where there was a conveyance of a specific parcel of land carved out of a larger one held by the grantor and described by metes and bounds only, nothing would pass as parcel of the granted premises which was matter of ease and convenience only, except what is included within the boundaries expressed in the deed; and the same rule is laid down in Washburn on Easement (marg., 26). I have found no authority in conflict with the rule as thus laid down.

These views lead to a conclusion which may possibly work hardship in this case. But the rule of construction adopted is too well established to be disregarded. It is safer to follow than to depart from it. It is a rule which confines the construction of conveyances generally to the language contained in them, without seeking for the intention of the parties in the uncertain light of facts sought elsewhere. In this case, if we were to speculate as to the intention of the grantor when he executed the mortgage, it is by no means certain that we could conclude that he intended to convey the right of way. If he had so intended why did he not mention it as he did the water privileges? Why did he not bound the land conveyed on the way? Why did he, by careful measurement, exclude the land over which the way passed from the conveyance? It may well be that he did not intend to convey the way, as it was only a way of convenience, and access to the land conveyed could be had in another direction. These remarks are made only to show how idle it is to speculate in such a case as to what the grantor intended, and how much better it is to apply settled rules of construction to the language and terms of the deed when applied to the subject-matter.

The testator, therefore, having become owner of both the

dominant and servient tenements, had the right to close up the way.

The judgment must be reversed and new trial granted.

All concur except Folger, J., not voting; Rapallo and Miller, JJ., absent.

Judgment reversed.