JACOB P. SCHNELLBACHER, Appellee, *vs.* VALENTINE JOBST, SR., *et al.* Appellants.

*Opinion filed December 22, 1915—Rehearing denied Feb. 3, 1916.*

1. DEEDS—*provision for easement construed.* Deeds conveying described portions of lots 1 and 2 in a certain block, and reserving to the grantors and their heirs, "while owner or occupier of any part of said lots 1 and 2, and to their assigns of any part of said lots 1 and 2, forever, a free and unincumbered right of way, at all times," over a strip of land eight feet wide across the rear of the premises conveyed, do not create an easement in favor of any portion of lot 2 not owned or occupied by any of the grantors and not described in any of the deeds.

2. SAME—*a grantor cannot grant easement over lands of other owners.* The owner of one, only, of several parcels of land in a block cannot, by inserting in a deed to such parcel a reservation of an easement for an alley over the rear eight feet of land conveyed, "for the use of the adjoining property on both sides of said private alley," grant an easement or stipulate for one over the lands of the other owners in the block.

3. SAME—*what does not create easement by prescription.* The use of a strip of land over the rear of certain premises for the mutual convenience of the owners, and which is occasional, permissive and for broken periods of time, does not create an ease-

ment, by prescription, in favor of owners of other lands adjoining such premises.

4. EQUITY—*removal of clouds from title is a proper subject of equity jurisdiction.* Where parties claim an easement of passage over certain land under quit-claim deeds, the owner of the land may come into a court of equity and seek to remove such deeds as clouds upon his title and to enjoin interference with his possession, as courts of law do not grant relief of that character.

APPEAL from the Circuit Court of Peoria county; the Hon. CLYDE E. STONE, Judge, presiding.

SAMUEL D. WEAD, and J. T. HUNTER, for appellants.

JACK, IRWIN & JACK, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant, Jacob P. Schnellbacher, filed his bill in this case in the circuit court of Peoria county against the appellants, Valentine Jobst, Sr., and George J. Jobst, for the removal of two quit-claim deeds as clouds upon his title to lot 1 and a part of lot 2, in block 33, in the original town (now city) of Peoria, to quiet his title as against the appellants' claim to a private alley eight feet wide along the southwest side of lot 2, and to enjoin them from interfering with his possession. The defendants by their answer claimed an easement in the strip of land eight feet wide for use as an alley appurtenant to their premises, by virtue of certain deeds which were alleged to have created the easement and also by prescription. The issues were referred to a special master in chancery, who reported the evidence and his conclusions that the complainant was the owner in fee of the premises in question, that the quit-claim deeds constituted clouds upon his title which he was entitled to have removed, and that there was no prescriptive right to the strip of land as an alley. The cause was heard by the chancellor on exceptions to the report, which were over-

ruled, and a decree was entered in accordance with the prayer of the bill.

James Denby died intestate in 1846, seized in fee of lots 1, 2 and 3, in block 33, leaving a surviving widow and six heirs-at-law. Lot 1 was located at the corner of the block, at the intersection of Liberty street (which extended along the northeast side of the lot) and Adams street, on the northwest side. The lot had a frontage of 72 feet on Adams street and extended 171 feet on Liberty street to a public alley 18 feet wide. Adjoining lot 1 on the southwest was lot 2, fronting on Adams street, and adjoining lot 2 was lot 3. In 1849 the heirs-at-law of James Denby partitioned the lots, and deeds were executed between them to carry out the partition. Lot 1 and 32 feet in width of lot 2, adjoining it on the southwest side, were conveyed to Mary M. Simms, Elizabeth Upshaw and Sophia M. Murden, giving them a frontage on Adams street of 104 feet. A conveyance was also made to Catharine Denby and Emeline R. Denby, two of the heirs, of the remaining portion of lot 2 and a part of lot 3, having in all 72 feet frontage on Adams street. The remaining portion of lot 3 was conveyed to James B. Denby. All of the premises conveyed extended to the public alley on the southeast. Afterward, in the same year, by a conveyance from Mary M. Simms, Elizabeth Upshaw and their husbands, Sophia M. Murden acquired the corner of lot 1 and part of lot 2, 43 feet wide on Liberty street and 104 feet on Adams street. Mary M. Simms and Sophia M. Murden and their husbands conveyed to Elizabeth Upshaw 65 feet on Liberty street adjoining the part conveyed to Sophia M. Murden. Mary M. Simms, Elizabeth Upshaw and Sophia M. Murden, with their husbands, conveyed to John Batten 30 feet in width of the premises fronting on Liberty street, next to the 65 feet conveyed to Elizabeth Upshaw, and also conveyed the remaining 33 feet to the public alley to William C. Henry. In each of these deeds the following provision was in-

serted: "Reserving, however, to said parties of the first
part and their heirs, and each of them, while owner or
occupier of any part of said lots 1 and 2, and to their as-
signs of any part of said lots 1 and 2, forever, a free and
unincumbered right of way, at all times, over that part of
the rear of the above described tract or parcel of land eight
feet wide and .... feet long and lying at the distance of
96 feet or more from said Liberty street." (Inserting in
the blank the width of the premises conveyed.)   The de-
fendants by *mesne* conveyances became the owners of the
part of lot 2 lying immediately southwest and contiguous
to the eight-foot strip of land mentioned in the reservation
as the right of way, together with a part of lot 3, giving
them a frontage of 79 feet on Adams street and 171 feet
in depth.

The first question presented in argument is whether the
reservation above quoted created an easement for the bene-
fit of that part of lot 2 not owned by the grantors lying
southwest of the land over which the easement was created.
It was decided in *Goodwillie Co.* v. *Commonwealth Elec-
tric Co.* 241 Ill. 42, that an easement may be created in
favor of one who is not a party to the contract for the
easement, and under that doctrine, if the premises conveyed
were, for a valuable consideration, burdened with an ease-
ment for the benefit of the appellant's property, they are
entitled to the benefit of the reservation.   Each deed de-
scribed lot 1 and a part of lot 2, and the language used in
the reservation referred to the ownership or occupation of
said lots 1 and 2.   The natural conclusion would be that
the reservation was in favor of the owners of the property
being conveyed.   In making the conveyance of the land
southwest of the alley to Emeline R. Denby and Catharine
Denby no mention was made of any alley or right of way
over the remaining portion, and in the line of conveyances
constituting the chain of title of the defendants every deed
confined the northeasterly limits of the property to 104 feet

from Liberty street and did not attempt to convey any easement in the strip in question or make any reference to an alley. William C. Henry, who owned a part of lots 1 and 2 fronting on Liberty street, as before stated, afterward acquired title from Catharine Denby to a portion of lot 2 southwest of his property, but the deed to him said nothing about any right in the alley. The reservation being for the benefit of the owner or occupier of any part of. said lots 1 and 2, we conclude that the intention was to create an easement in favor of the property then conveyed, and that there was no intention to grant an easement in favor of some portion of lot 2 not described in any of the deeds. The deeds did not create an easement in favor of the lands of the defendants.

A question of some difficulty is raised by a deed which covered 30 feet in length of the part reserved for an alley. In 1905 the Bradley Polytechnic Institute, a corporation, was the owner of the part of lot 2 now owned by the defendants and also of the 30 feet in width of lots 1 and 2 fronting on Liberty street which was conveyed to John Batten, and made a contract with the complainant to sell him said portion of lots 1 and 2 conveyed to Batten. The contract contained this recital: "Subject, however, to the easement of the private alley now in use from Adams street to the alley in said block, eight feet wide, across the above described property, for the use of the adjoining property on both sides of said private alley." A deed was made in 1911 in pursuance of the contract, containing the same language. The complainant refused to accept the deed until the words "from Adams street to the alley in said block" had been stricken out, but after they were stricken out he accepted the deed. The reservation in that deed applies to only 30 feet, and the institute could not grant an easement or stipulate for one over the lands of other owners. After the words describing the alley as extending from Adams street to the alley in the block had been erased the reservation

related only to 30 feet near the southeast end of the alley and was not effective to create the claimed alleyway or for any useful purpose.

Before the deed to the complainant was made by the Bradley Polytechnic Institute it conveyed the land southwest of the alleged alley to Edward C. Leisy, and in 1910 Leisy conveyed the same to the defendants. In neither deed was there any conveyance or attempted conveyance of any right or interest in an alley, but afterward, in 1910, the institute made a quit-claim deed to Leisy of the alleged easement. He had then disposed of his interest in the premises and made a quit-claim deed to the defendants purporting to convey the same easement. These quit-claim deeds are the deeds which the bill asked to have removed as clouds upon the complainant's title. We think the chancellor was right in finding that none of the deeds was effective to create the alleged easement over the southwest eight feet of the complainant's property.

It was claimed that the defendants and their predecessors in title had acquired an easement in the complainant's property for the use of the eight feet as an alley by adverse and uninterrupted use and enjoyment for the requisite period. The strip of land had been used in common by the owners of property abutting on it, and in 1889 Lydia Bradley, who was then the owner of the property now owned by the defendants, constructed a brick pavement from the public alley southeast of the premises to within about 75 feet from Adams street, where it connected with a similar pavement constructed by the complainant. The use of the alley was for the mutual convenience of the owners, and the master found that it was occasional, permissive, for broken periods of time, and not adverse. The chancellor overruled exceptions to that finding, and we do not regard the conclusion of the chancellor as contrary to the evidence.

It is argued that the court of equity had no jurisdiction because the complainant had an adequate remedy at law. The removal of clouds from a title to real estate is a subject of equity jurisdiction, and relief of that character is not afforded by courts of law. Application to the court of equity was proper.

The decree is affirmed.                    *Decree affirmed.*