BURLING v. LEITER.

1. Easements—Adverse Possession—Tacking.

Claimant of an easement of passage over lands of another may not tack rights of himself and predecessors in title which were not specifically conveyed so as to build up any claim of right or title, or to an easement by prescription or adverse possession where no one had held possession long enough to claim title by adverse possession.

2. Same—Statute of Frauds—Conveyances.

Since the statute of frauds requires that conveyances of real estate be in writing nothing will pass as an easement to a dominant estate unless a right to thus use it has been made appurtenant to the granted premises, or is expressly mentioned in the deed conveying the same as intended to be conveyed thereby (3 Comp. Laws 1929, § 13411).

3. Same—Definition.

An easement proper is a privilege which the owner of one tenement has a right to enjoy in or over the tenement of another person; hence, from its very nature one may not have an easement in land which he owns in fee.

4. Deeds—Construction of Grant—Rights of Grantee.

One who owns a tract of land, or two or more adjoining lots, when no public or private rights are interposed, may sell any

portion he pleases, and the terms of the grant as they appear from the language of the deed legally construed will measure the rights of the grantee.

5. EASEMENTS—DISTINCTION IN CREATION OF CONTINUOUS AND NON-CONTINUOUS EASEMENTS.

   Easements are divided into continuous easements which pass upon severance of the two tenements without the use of the word appurtenance, and noncontinuous or discontinuous easements which pass only when the grantor uses language in the conveyance sufficient to create the easement *de novo.*

6. SAME—DEFINITION.

   A continuous easement is one which may be enjoyed without any act on the part of the dominant owner while a noncontinuous easement is one the enjoyment of which requires the act of the dominant owner.

7. SAME—RIGHT OF WAY—CONTINUOUSNESS.

   Continuousness is not a quality or characteristic of a right of way, such an easement being only a place in which its owner may operate.

8. SAME—UNITY OF SEIZIN OF DOMINANT AND SERVIENT TENEMENTS —WAY OF NECESSITY—CONVEYANCE.

   A right of way has no existence during the continuance of unity of seizin of the dominant and servient tenements and upon their severance does not pass unless it be a way of necessity or operative words of the conveyance grant it *de novo.*

9. SAME—WAY OF CONVENIENCE.

   An easement not of strict necessity will not pass by implied grant unless it be apparent and continuous.

10. SAME—IMPLIED EASEMENTS.

    No implication of a grant of a right of way can arise from proof that the land granted cannot be conveniently occupied without it since an implied easement rests upon necessity, not upon convenience.

11. SAME—BURDEN OF PROOF.

    To entitle subsequent owner of alleged dominant tenement whose predecessor in title in his deed from common grantor had no words creating easement, owner of servitude must sustain burden of proof that it was apparent, continuous and strictly necessary to the enjoyment of his lands.

12. SAME—IMPLIED ONLY WHEN STRICTLY NECESSARY.

The rule that easements will be implied only when strictly neces-
sary is founded upon the mere necessity of the case and the
impossibility of admitting that the contract and the intention
of the parties thereto would be incomplete without the implica-
tion, since to do otherwise would seriously impair the security
of titles by deeds.

13. SAME—WAY OF NECESSITY.

A way of necessity to back part of a city lot 22 feet wide *held*,
not to exist where the entire front of the lot abutted a street,
although when common grantor deeded it to predecessor of
owner of alleged right of way across adjoining lot a house 15
feet wide had been erected thereon.

14. SAME—RIGHT OF WAY MERGED IN OWNERSHIP OF SOIL.

A right of way over a man's own land is not something separate
from the fee simple title but is merged in the ownership of the
soil.

15. SAME—STRICT NECESSITY—WAY OF CONVENIENCE.

Fact that passage through a man's own land to various parts
thereof may need repairs, is too steep or too narrow is insuffi-
cient to enable him to claim a way of necessity over his
grantor's adjoining land but it must appear the grantee has
no other way.

16. SAME—OBSTRUCTING WAY OF CONVENIENCE.

One who owns land with buildings clear across it that exclude
the possibility of reaching the rear part of it without passing
over the lands of another cannot thereby create a right of way
by necessity because of his having obstructed the convenient
way of access by buildings.

17. SAME—PRESCRIPTION.

Title to an alleged right of way by adverse possession or pre-
scription is not acquired by showing that it had been used for
mutual convenience, or occasionally only, or by permission of
the owner for broken periods.

18. SAME—WAY OF NECESSITY.

In order to create a way to back of city lot by necessity, the
necessity must exist at the time of the conveyance as to the
whole tract conveyed and cannot be created thereafter by the
grantee or his successors in title by obstruction, subdivision or
otherwise.

NELSON SHARPE and BUSHNELL, JJ., dissenting.

Appeal from Muskegon; Vanderwerp (John), J. Submitted April 5, 1935. (Docket No. 95, Calendar No. 38,366.) Decided September 9, 1935.

Bill by Sarah Frances Burling against Susie Leiter, Jacob H. Kushnak and Sally T. Kushnak for an injunction restraining defendants from driving vehicles upon plaintiff's property. Cross-bill by defendants against plaintiff to establish an easement, for an injunction and other relief. Decree for defendants on cross-bill. Plaintiff appeals. Reversed and decree entered for plaintiff.

*Penny & Clark,* for plaintiff.

*Cross, Foote & Sessions,* for defendants Kushnak.

*Joseph F. Sanford,* for defendant Leiter.

POTTER, C. J. Plaintiff, claiming to be the owner of lot 10, block 361, revised plat of the city of Muskegon, filed a bill of complaint to restrain defendants from entering upon, or driving or parking cars, automobiles, trucks or vans upon, over or across any part or portion of lot 10, block 361, revised plat of the city of Muskegon.

Defendants filed an answer in the nature of a cross-bill claiming an easement or right of way upon, along or over the south part of lot 10, block 361, revised plat of the city of Muskegon, to reach the back part of lot 11, block 361, of the same plat, and sought to enjoin plaintiff from obstructing such easement or right of way.

After hearing before the trial court, the temporary injunction issued to plaintiff was dissolved and defendants granted the relief prayed. From this decree, plaintiff appeals.

Prior to 1885, Walter Burling owned all of the land and premises in dispute and erected a dwelling

house upon a strip of land 22 feet wide lying south of lot 10. He owned this land together with lot 10, all of which was unplatted, and this 22-foot strip was sold by metes and bounds. Walter Burling erected a dwelling house upon the strip of land conveyed. This dwelling house as erected by Burling was 15 feet in width, and the lot or parcel was 22 feet in width. This house was erected so close to the south line of the 22-foot strip that you could not walk between that and the house immediately south of it. There was no way of getting between the houses. Such was the condition of the property when Walter Burling sold it.

In 1920, the McDonalds, who owned the house in question, remodeled it and built a porch on the front thereof. Before that time, there were steps on the north side of this house, but the platform which has since been inclosed was not built until 1920.

Walter Burling sold this 22-foot strip August 5, 1885, and after he sold it the lands were platted, and lot 11 was platted as 20 feet in width. The subsequent conveyances of the premises, including this house erected by Burling, were as lot 11. It was only after this suit was commenced it was discovered there was a strip of land two feet wide between the lands owned by plaintiff and the lands owned by defendants which neither of them owned. After the commencement of this suit, defendants acquired title to this two-foot strip, and now own the same. The defendant Leiter bought lot 11 in 1928. She did not claim the driveway. She sought to sell lot 11 to plaintiff, and said in her letter:

"If you would give one-half the driveway you can get five thousand dollars for it."

The defendants Kushnak admit they knew at the time they acquired their equitable interest in lot 11

they did not acquire or own the driveway, and in July, 1930, sought to rent the driveway across the lands and premises of plaintiff. In a letter to plaintiff, defendant Jacob Kushnak said:

"Some time ago you asked me if I would just as soon pay some reasonable amount for the use of the driveway, or rent, * * * I hope that you and I can get to some agreement for what little it may be used by renters, friends or myself. Now, I think $4 is a reasonable amount for one year."

Prior to the commencement of this suit and the acquisition by defendants of title to the strip two feet wide lying between lots 10 and 11, defendants' lands did not even adjoin those of plaintiff. It is apparent neither the defendants nor any of their predecessors in title subsequent to Walter Burling owned the lands and premises in dispute for a period sufficiently long to claim title by adverse possession. There can be no tacking of the rights of the several parties through whom defendants claim, such rights not having been specifically conveyed so as to build up any claim of right or title or to an easement by prescription or adverse possession.

If the house on the lands and premises of defendants was built, as the undisputed testimony shows, 15 feet wide, and so close to the south line thereof that you could not get between it and the adjoining house on the south, there was a strip six or seven feet wide on the north side of the house before the lands and premises of plaintiff were reached. True, the defendants did not own all of this land and did not acquire the intervening strip of two feet until after the commencement of suit. In 1920, at a time clearly within the period of the statute of limitations, the platform was built on the north side of defendants' house, and, according to the surveyor, projected beyond the limits of lot 11, two and three-

tenths feet—that is, far enough north to cover the entire width of the two-foot strip, and three-tenths of a foot in addition thereto.

Under the statute of frauds, conveyances of real estate must be in writing. 3 Comp. Laws 1929, § 13411. Nothing will, therefore, pass as an easement to a dominant estate unless a right to thus use it has been made appurtenant to the granted premises, or is expressly mentioned in the deed conveying the same as intended to be conveyed thereby. *Ward* v. *Farwell,* 6 Col. 66; Washburn's Easements and Servitudes (4th Ed.), chap. 1, § 3, subds. 18–32.

An easement proper is a privilege which the owner of one tenement has a right to enjoy in or over the tenement of another person. *Parsons* v. *Johnson,* 68 N. Y. 62 (23 Am. Rep. 149).

From the very nature of an easement, one may not have an easement in land which he owns in fee. *Wright* v. *Rattray,* 1 East T. R. 377 (102 Eng. Rep. 146); *Parsons* v. *Johnson, supra; Stuyvesant* v. *Woodruff,* 21 N. J. Law, 133 (47 Am. Dec. 156); *Michelet* v. *Cole,* 20 N. M. 357 (149 Pac. 310); Washburn's Easements and Servitudes (4th Ed.), pp. 64, 192.

One who owns a tract of land, or two or more adjoining lots, when no public or private rights are interposed, may sell any portion he pleases, and the terms of the grant as they appear from the language of the deed legally construed will measure the rights of the grantee. *Salisbury* v. *Andrews,* 19 Pick. (36 Mass.) 250; *Warren* v. *Blake,* 54 Me. 276 (89 Am. Dec. 748).

Easements are divided into continuous easements and non-continuous or discontinuous easements. *O'Rorke* v. *Smith,* 11 R. I. 259 (23 Am. Rep. 440); *Hoffman* v. *Shoemaker,* 69 W. Va. 233 (71 S. E. 198, 34 L. R. A. [N. S.] 632); *Parsons* v. *Johnson, supra; Fetters* v. *Humphreys,* 19 N. J. Eq. 471; *Morgan* v.

*Meuth,* 60 Mich. 238; *Zemon* v. *Netzorg,* 247 Mich. 563; Gale Easements (10th Ed.), p. 30; Washburn's Easements and Servitudes (4th Ed.), p. 107.

The distinction between easements which are apparent and continuous and those which are not apparent and non-continuous is completely established by the adjudicated cases. The former pass on the severance of the two tenements as appurtenant without the use of the word "appurtenance," but the latter do not pass unless the grantor uses language in the conveyance sufficient to create the easement *de novo. Fetters* v. *Humphreys, supra; Parsons* v. *Johnson, supra; Morgan* v. *Meuth, supra; Zemon* v. *Netzorg, supra.*

A continuous easement is one, say the authorities, which may be enjoyed without any act on his part, as a waterspout which discharges the water whenever it rains—a drain by which surface water is carried over land—windows through which light and heat enter, etc. A non-continuous easement is one to the enjoyment of which the act of the party is essential, and of this class a way is the most usual. *Lampman* v. *Milks,* 21 N. Y. 505; *Polden* v. *Bastard,* L. R. 1 Q. B. 156 (122 Eng. Rep. 456, 7 B. & S. 130, 35 L. J. Q. B. 92, 13 L. T. 441, 14 W. R. 198); *Providence Tool Co.* v. *Corliss Steam Engine Co.,* 9 R. I. 564; *Elliott* v. *Rhett,* 5 Rich. Law (S. C.), 405 (57 Am. Dec. 750); *Denton* v. *Leddell,* 23 N. J. Eq. 64; *Morgan* v. *Meuth, supra; Zemon* v. *Netzorg, supra.*

The quality or characteristic of continuousness does not belong to a right of way. Such an easement is not self-operating. It is only a place in which its owner operates. *Hoffman* v. *Shoemaker, supra.*

It has no existence during the continuance of unity of seizin, and upon severance of the tenements does not pass unless it is a way of necessity or the operative words of the conveyance are sufficient to

grant it *de novo*. 11 Viner's Abr. (2d Ed.), pp. 446–449; *Worthington* v. *Gimson,* 2 Ell. & Ell. (Q. B.) 618 (29 L. J. Q. B. 116, 121 Eng. Rep. 232); *Pearson* v. *Spencer,* 1 B. & S. 571 (4 L. T. 769, 121 Eng. Rep. 827); *Dodd* v. *Burchell,* 1 Hurl. & Colt. 113 (158 Eng. Rep. 822, 31 L. J., Ex. 364); *Stuyvesant* v. *Woodruff, supra; Grant* v. *Chase,* 17 Mass. 443 (9 Am. Dec. 161); *Michelet* v. *Cole, supra.*

The decided weight of authority, both English and American, is to the effect that an easement not of strict necessity will not pass by implied grant unless it be apparent and continuous. *Bonelli Bros.* v. *Blakemore,* 66 Miss. 136 (5 South. 228, 14 Am. St. Rep. 550); *Zemon* v. *Netzorg, supra.*

No implication of a grant of a right of way can arise from proof that the land granted cannot be conveniently occupied without it. Its foundation rests upon necessity, not upon convenience. *Milliken* v. *Denny,* 141 N. C. 224 (53 S. E. 867); *Dodd* v. *Burchell, supra; Smith* v. *Griffin,* 14 Col. 429 (23 Pac. 905); *Carey* v. *Rae,* 58 Cal. 159; *Kripp* v. *Curtis,* 71 Cal. 62 (11 Pac. 879); *M'Donald* v. *Lindall,* 3 Rawle (Pa.), 492; *Cooper* v. *Maupin,* 6 Mo. 624 (35 Am. Dec. 456).

As said in *Covell* v. *Bright,* 157 Mich. 419:

"To entitle the complainant to a decree the burden was upon him to establish that the servitude was apparent, continuous, and strictly necessary to the enjoyment of his lands. 14 Cyc. p. 1169; *Carbrey* v. *Willis,* 7 Allen (89 Mass.), 364 (83 Am. Dec. 688); *White* v. *Chapin,* 97 Mass. 101; *Crosland* v. *Rogers,* 32 S. C. 130 (10 S. E. 874); *Dolliff* v. *Railroad,* 68 Me. 173; *Butterworth* v. *Crawford,* 46 N. Y. 349 (7 Am. Rep. 352); *Treadwell* v. *Inslee,* 120 N. Y. 458, 465 (24 N. E. 651); *Wells* v. *Garbutt,* 132 N. Y. 430, 435 (30 N. E. 978)."

The rule of implication is founded upon the mere necessity of the case and the impossibility of admitting that the contract and the intention of the parties to it would be incomplete without the implication. Upon this principle, every one of the cases is founded, and all are reconcilable, and no case has been found in which an implication has been made not based upon necessity. *Wheeldon* v. *Burrows*, 12 Chan. Div. 31 (48 L. J., Chan. Div. 853, 41 L. T. 327, 28 W. R. 196); *Hoffman* v. *Shoemaker, supra.*

If we adopt any other rule than that of strict necessity, we open the door to doubt and uncertainty, to the disturbance and questioning of titles, and to controversies as to matters of fact outside the language of the deed. If an estate freely granted without exception or reservation can be incumbered forever by an easement or right of use by a third party by the finding of a jury that such use would be highly convenient, or that it was exercised by a former owner, or was notorious, or any other ground short of strict necessity, the sanctity and security of titles by deeds, exact and precise in their terms, would be seriously shaken and impaired. *Randall* v. *McLaughlin,* 10 Allen (92 Mass.), 366.

There are only two ways in which an easement could, under the circumstances of this case, have been created—one, by express grant—another would have been by granting the land under such circumstances the grantee could have had no way out to a public highway except through the land conveyed by the grantor, called a way of necessity. There is no claim there was any express grant. And a way of necessity could not exist because the entire front of the lot conveyed was upon Sanford street, a public highway, so there was no necessity for a way over

the plaintiff's land to reach the public highway. *May* v. *Smith*, 3 Mackey (14 D. C.), 55.

As said in the case last above cited (58):

"In this case there was no right of way from the western part of this lot conveyed in fee simple to the eastern part, *as a separate easement or incorporeal heriditament* (hereditament). A man cannot have a right of way over his own land as something separate from the fee simple ownership; all such rights are considered merged in the ownership of the soil."

In *Smith* v. *Griffin, supra,* it is held (quoting syllabus):

"The purchaser of a city lot 75 feet deep, with a frontage of 25 feet on a street, is not entitled to a way by necessity to the rear of his lot over the adjacent land of his grantor."

In *Carey* v. *Rae, supra,* it is said:

"If the appellant has any right whatever to burden the respondent's land, it originates only in the necessity of the circumstances in which he is placed, and not in grant. Those circumstances show that he has a way, which needs repair, and that until repaired it is impassable. But the impassability of the road gives to a party no right to an easement."

In *Kripp* v. *Curtis, supra,* it is said:

"The right of way from necessity must be in fact what the term naturally imports, and cannot exist except in cases of strict necessity. It will not exist when a man can get to his property through his own land. That the way over his own land is too steep or too narrow, or that other and like difficulties exist, does not alter the case, and it is only where there is no way through his own land that a grantee can claim a right over that of his grantor. It must also appear that the grantee has no other way."

In *M'Donald* v. *Lindall, supra,* it is said:

"The right of way from necessity, over the land of another, is always of *strict necessity,* and this necessity must not be created by the party claiming the right of way. It never exists where a man can get to his property through his own land. That a road through his neighbour's would be a better road, more convenient, or less expensive, is not to the purpose; that the passage through his own land is too steep or two (too) narrow does not alter the case. It is only where there is no way through his own land, that the right of way over the land of another can exist."

In *Cooper* v. *Maupin, supra,* 633, it is said:

"No case has yet sustained a right of way from necessity from one part of the claimant's land to another part of the same contiguous tract over the land of another. How can such a way be called a way of necessity? It may be convenient, but I understand the necessity must be absolute, and created by the intervention of another's land. In *Gayetty* v. *Bethune,* 14 Mass. 49, the court declared there was no necessity, because the plaintiff could have torn down his brick wall. A proceeding I should suppose as troublesome and expensive as cutting down a bluff. * * * 'The defendant can have no right of way by necessity over the land of plaintiff to any other portion of the same entire tract of defendant's land.' "

Defendants' property faces Sanford street. They have the right of access thereto from the street. There is no intervening property. That it is more convenient to pass over the lands of plaintiff does not give defendants a right of way of necessity or easement over such land. There is no such thing as a way of necessity over the lands of another to reach premises to which the person claiming the easement has access from a public highway.

One who owns a parcel of land with buildings clear across it that exclude the possibility of reaching the rear part of it without passing over the lands of another cannot thereby create a right of way of necessity because of his having obstructed the convenient way of access by buildings.

Where an alleged right of way is shown to have been used for mutual convenience, or occasionally only, or by the permission of the owner of the premises for broken periods, title by adverse possession or prescription is not acquired. *Schnellbacher* v. *Jobst,* 271 Ill. 319 (111 N. E. 138).

In order to create such a way by necessity, the necessity must exist at the time of the conveyance as to the whole tract conveyed. The grantee cannot subsequently subdivide the tract and sell all or a portion in such a manner as to make a way of necessity to some particular portion thereof which did not exist as to the whole tract. *Lankin* v. *Terwilliger,* 22 Ore. 97 (29 Pac. 268); *United States* v. *Rindge,* 208 Fed. 611.

"When a grantor conveys land to which the grantee has a way that furnishes him full and free access to the property conveyed, and the grantee thereafter voluntarily closes up this way or deprives himself of its use, he cannot claim by implication of law another right-of-way over the land of the grantor." *Kentucky Distilleries & Warehouse Co.* v. *Warwick Co.,* 166 Ky. 651 (179 S. W. 611).

"A party cannot have a way of necessity through the land of another when the necessary way to the highway can be obtained through his own land, however convenient and useful another way might be." 19 C. J. p. 922.

"A way by necessity can be implied only when the necessity existed at the time of the grant. In other words, the necessity is to be determined from the conditions existing at the time of the conveyance.

* * * As a consequence of the rule stated this necessity must not be created by the party claiming the right of way. A grantee cannot so change the uses of land as to convert a way of convenience into a way of necessity. Nor can he create such necessity by subdividing and selling separate portions thereof." 19 C. J. p. 926.

One owning land has a right to use it as he sees fit, and defendants and their grantors had a right to build the house in question where they built it. But they can gain no rights in the lands and premises of the plaintiff by reason of having built a house entirely across the lands and premises belonging to them, thereby excluding themselves from passing from the lands in front of the house to the lands in back of the house except through the house.

The principles here involved were more elaborately discussed in *Morgan* v. *Meuth, supra,* and *Zemon* v. *Netzorg, supra.*

Decree reversed, with costs. Decree will be entered for plaintiff.

NORTH, FEAD, BUTZEL, and EDWARD M. SHARPE, JJ., concurred with POTTER, C. J.

WIEST, J. (*concurring*). Defendants' lot fronts on the street and the easement sought is clearly one of convenience only.

I concur in reversal on that ground.

NELSON SHARPE, J. (*dissenting*). I cannot concur with Chief Justice POTTER in holding that the defendants have not an easement or right of way over the driveway in question.

Sanford street in the city of Muskegon runs north and south. In 1879, Walter Burling and his wife became the owners of a tract of land having a frontage on the street of six rods and a depth of eight

rods. They erected three houses thereon, all fronting on Sanford street. The one at the south was built close to the boundary line, and was 15 feet in width. There was a space of about 15 feet between it and the one next to it towards the north. The one further north was occupied by them, and the other two were rented by them.

In 1885 they sold to Zalmon D. Hinkley and wife the south 22 feet of their tract, on which stood the house 15 feet in width above referred to. The Hinkleys sold to Thomas W. Lee and his wife, and they to William R. Emmens and his wife, and they to Charlotte McDonald, who became the owner in 1897. Soon thereafter a plat of the entire tract was made and recorded. In it but 20 feet of the frontage of the land owned by her was platted as lot 11. The attention of the defendants was called to this error before the hearing in the circuit court, and they were permitted to put in evidence a deed of the two feet from her to the defendant Susie Leiter, who later had acquired title to lot 11, and amend their answer to comply therewith. This was done over the objection of plaintiff's attorney, but I find no error in the action of the court as lot 11 was thereafter always treated as containing the entire 22 feet.

An outside door had been placed on the north side of the house on this 22 feet, and, to reach it and gain access to the inside of the house through it, a small platform had been built in front of it with steps leading thereto. The knowledge of the witnesses who testified to its being so placed and the use of the driveway by the occupants of the house was limited to about 36 years before the hearing. An engineer, called by plaintiff as a witness, who had made certain measurements of the lots, testified on cross-examination:

"The building on lot 11, including the porch, covers not only the entire width of lot 11, but projects to the north two and three-tenths feet. I do not know how long that porch has been on the house. It looks as though it was built about the same time as the house was. I didn't pay any attention to the brick that holds it up.  *  *  *

"There is no alley in that block. You would have to walk through the house. The house is 15 feet wide and with the porch on it it covers the entire width of the lot."

It thus quite clearly appears that at the time Mr. and Mrs. Burling sold to Mr. and Mrs. Hinkley there was no way in which a vehicle of any kind could reach the rear of the land conveyed except by passing along the 15-foot space which separated the house on it from that on the land to the north of it.

The trial court in his opinion stated that at the request of counsel he had viewed the premises. He also said:

"When Burling sold to Hinkley, the rights of the latter in the drive or passageway became fixed as an easement appurtenant to the estate granted, and passed thereby to Hinkley and later to the successive grantees, as I have indicated above, accessorial to the beneficial use and enjoyment of the granted premises."

I think he was right in so finding and in entering the decree based thereon. The facts clearly establish that when the Burlings erected the houses on what are now lots 10 and 11 space was left for a passageway between them on the south side of lot 10 in order that access might be had to the rear part of lot 11; that this passageway was reasonably necessary to the use of this lot and the house thereon for residence purposes, and that an easement was

thereby created by implication which inured to the benefit of the Hinkleys and all subsequent owners of the land conveyed to them, and that the plaintiff as owner of lot 10 took title subject thereto.

"An easement is a privilege without profit which one has for the benefit of his own land in the land of another. * * * It is essential to an easement that there be two distinct tenements or estates, a dominant one to which the right belongs, and a servient one upon which the obligation is imposed." *Hasselbring* v. *Koepke,* 263 Mich. 466, 479 (93 A. L. R. 1170).

Counsel for the plaintiff concede in their brief that it may be created by implication.

In *Smith* v. *Dresselhouse,* 152 Mich. 451, 454, this court said:

"It is a general rule of the law of easements that where the owner of two tenements sells one of them, the purchaser takes the portion sold with all the benefits and burdens which appear at the time of the sale to belong to it as between it and the property which the vendor retains."

See, also, *Bean* v. *Bean,* 163 Mich. 379, and *Flax* v. *Mutual Building & Loan Association of Bay County,* 198 Mich. 676.

"The general rule is that where during the unity of title an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use and is reasonably necessary for the fair enjoyment of the other, then upon a severance of such ownership there arises by implication of law a grant of the right to continue such use. The application of the rule must depend upon the nature, arrangement and use of the estate, the relation of the parts to each other, and the existing degree of necessity for giving such construction to the grant as will give

effect to what may be supposed to have been, considering the manner of the use, the reasonable intendment of the parties; the underlying principle in such cases being that included in the grant are all such privileges and appurtenances as are obviously incident and necessary to the fair enjoyment of the thing granted, substantially in the condition in which it is enjoyed by the grantor, unless the contrary is provided." 9 R. C. L. p. 755.

"The degree of necessity is such merely as renders the easement necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made." 9 R. C. L. pp. 763, 764.

"The easement as an incorporeal hereditament passed to each owner of the land without specific mention thereof in conveyances. Being attached to the estate, and not to the person of the owner of the dominant estate, the easement followed the estate into the hands of subsequent purchasers without specific mention in deeds." *Greve* v. *Caron,* 233 Mich. 261, 265.

Counsel for the plaintiff stress the fact that Mrs. Leiter testified that she at one time told the defendant Kushnak that she "didn't own the drive." She, however, stated that when she bought the lot she "claimed to own it," but was told by plaintiff's son that she did not. Of course, she does not own it. It is not included in her deed. The claim here made is not of ownership, but of an easement, created by implication which entitles her to the use of it in common with plaintiff's tenant on lot 10. That it has been so used, with slight interruptions, for more than 35 years, is clearly established.

In my opinion the decree should be affirmed, with costs to appellees.

BUSHNELL, J., concurred with NELSON SHARPE, J.