Filed April 23, 1890.

No. 15,338.

## LOGAN v. STOGSDALE.

HIGHWAY.—*Act Providing for Establishment of Branch Highways.— Unconstitutionality of.*—The act of March 9th, 1889, entitled "An act providing for the establishment of branch highways," etc., which provides for the establishment of branch highways, and gives to any freeholder who has no outlet to a highway the right to petition the board of county commissioners to establish a way, is unconstitutional, as it assumes to authorize the seizure of the property of one citizen for the benefit of another.

WAY OF NECESSITY.—*Parties Claiming Under Common Grantor.—Rights of First Grantee.*—Where two parties claim under a common grantor, the one first taking a conveyance, his land having no outlet to the public highway, is entitled to a way of necessity over the land of the other purchased subsequently, he occupying towards the first grantee the position of the common grantor before he parted with title, and bound to carry into effect his implied grant of a right of way.

From the Grant Circuit Court.

Logan *v.* Stogsdale.

*W. Carroll* and *G. Dean,* for appellant.
*H. Brownlee* and *H. J. Paulus,* for appellee.

ELLIOTT, J.—The appellant in her complaint describes a tract of land of which she is the owner, and alleges that the appellee is also the owner of a parcel of land which she particularly describes. In addition to the allegations referred to the complaint contains the following: That in the year 1878 Enos Key was the owner of both parcels of land; that in January of that year he sold to the plaintiff the land she owns; that he subsequently sold and conveyed to the appellee's grantor the land now owned by the appellee; that both of the parties to this action hold under Enos Key; that the land of the plaintiff is surrounded on all sides by the lands of divers persons, including the land of the appellee; that the plaintiff's land is completely shut off from any highway; that it is impossible to go to the plaintiff's land or to go from it without passing over adjoining lands; that the appellee refuses to permit the plaintiff to pass over his land to a highway, and for the purpose of preventing her from passing over his land has erected high and strong fences; that he threatens to sue her if she enters upon his land; that there are improvements on her land, and her own home is there; that the best and shortest way to a highway is over the appellee's land, and that the distance is sixty rods. The prayer is that the court shall establish for the plaintiff, as a way of necessity, a way to the highway across the land of the appellee. To this complaint a demurrer was sustained.

All that is presented in argument in defence of the ruling of the trial court by the appellee's counsel is, that, under the act of March 9th, 1889, the action ought to have been brought in the court of the county commissioners, and that the circuit court has no jurisdiction of the subject. The appellant's counsel contend that the act of March 9th, 1889, is in violation of the Constitution, and is therefore void.

The act in question assumes to provide for the establish-

ment of branch highways, and to give any freeholder who
has no outlet to a highway the right to petition the board
of county commissioners to establish a way.   The act pro-
vides that the owner of the land upon which it is proposed
to establish a way may remonstrate on two grounds, and no
other: "*First*. That another convenient and less injurious
route can be established over his said lands, or the lands of
another. *Second*. That the proceeding is wrongful, oppress-
ive or malicious." Elliott's Supp., sections 1539–1542.   It
is evident from the provisions to which we have just referred,
and from other provisions of the act, that the Legislature
intended to grant a freeholder who is shut off from a high-
way a right to secure a way across the land of another upon
the payment of damages.   It is not made essential that the
way shall be one required by the public, for the whole scope
and tenor of the act indicates that it was intended to secure
a right of way to private property owners.   That this was
the intention is evident from the introductory part of the
first section, wherein it is provided: "That whenever any
freeholder of this State owning lands surrounded by the
lands of others, and over which he must necessarily travel
in order to reach his own lands, and there is no other outlet
to the public road, shall petition the board of commissioners
of the county in which the lands necessary to be travelled over
are situate, for the location of a branch highway thereon, set-
ting forth facts in his petition, which must be verified; such
board, if it be satisfied that notice of the filing of said
petition has been served upon the owner of such other
lands, at least ten days before the meeting of the
board at which such petition is to be presented, shall
appoint three disinterested freeholders to view such high-
way." The provision is an influential one, for it declares
what the petition shall contain, and it is in harmony with
other provisions of the act, for all the influential provisions
indicate and express an intention to authorize the seizure of
property for a private way.   The provision as to what the

petition shall show, the rigid and emphatic restriction of the questions that may be presented by the property owner whose land it is proposed to seize, and the provisions declaring what questions shall be tried, all combine to prove that the act was intended to authorize the seizure of property for a private way, and to compel an unwilling property owner to yield his land for that purpose. It is impossible to construe the act as one authorizing only the establishment of public roads, for it will bear no such construction. Nor is it possible to effect a separation of its provisions, for they are so blended that severance is impossible, and as the provisions are inseparable the act must be taken in its entirety. *Griffin* v. *State, ex rel.,* 119 Ind. 520; *State, ex rel.,* v. *Indiana, etc., Mining Co.,* 120 Ind. 575; *Baldwin* v. *Franks,* 120 U. S. 678; *Virginia Coupon Cases,* 114 U. S. 269; *Trade-Mark Cases,* 100 U. S. 82; *United States* v. *Reese,* 92 U. S. 214.

It is true that in the preamble, and in some of the provisions in the body of the act, there is an indirect assertion that the use for which authority is conferred to seize private property is a public one, but such an assertion, even if made in the clearest terms, can not rescue the act from condemnation, for it is not within the power of the Legislature to determine what is a public use within the meaning of the Constitution. Whether the use is a public one is a judicial question, and not a legislative one. *Sadler* v. *Langham,* 34 Ala. 311; *In re Deansville Cemetery Ass'n,* 66 N. Y. 569; *Bankhead* v. *Brown,* 25 Iowa, 540; *Tyler* v. *Beacher,* 44 Vt. 648; *In re St. Paul, etc., R. W. Co.,* 34 Minn. 227; *City of Savannah* v. *Hancock,* 91 Mo. 54; *Concord Railroad* v. *Greely,* 17 N. H. 47; *Town of Rensselaer* v. *Leopold,* 106 Ind. 29. A private use can not be transformed into a public one by a mere legislative declaration.

As the act assumes to authorize the seizure of the property of one citizen for the benefit of another, it can not be upheld. Our own decisions declare that land can not be seized

Logan v. Stogsdale.

for a private road, and they are well sustained by the decisions of other courts.   *Wild* v. *Deig*, 43 Ind. 455;  *Stewart* v. *Hartman*, 46 Ind. 331; *Sanxay* v. *Hunger*, 42 Ind. 44; *Blackman* v. *Halves*, 72 Ind. 515.  The doctrine of our cases is sanctioned by Judge Cooley, and many decisions asserting the same rule are cited by him.   Cooley's Const. Lim. (5th ed.) 657.

We are compelled to sustain the contention of the appellant, and adjudge the act of March 9th, 1889, to be void, because it violates the provisions of the Constitution.   As that act is without force, the circuit court had jurisdiction of the subject, and the only question is, whether the complaint states facts sufficient to constitute a cause of action.

In the case of *Anderson* v. *Buchanan*, 8 Ind. 132, the court quoted with approval from Chancellor Kent the following statement:  " Thus, if a man sells land to another which is wholly surrounded by his own land, in this case the purchaser is entitled to a right of way over the other's ground to arrive at his own land."  3 Kent Com. 420.  This is an apt illustration of the old and familiar doctrine of ways by necessity, and the doctrine has often been given effect by our decisions.   *Steel* v. *Grigsby*, 79 Ind. 184; *Sanxay* v. *Hunger*, *supra*;  *Stewart* v. *Hartman*, *supra*. If the appellant's grantor had remained the owner of the land now owned by the appellee, it is clear that she would be entitled to a way, as of necessity, to the public road. *Kimball* v. *Cochecho Railroad*, 27 N. H. 448 (59 Am. Dec. 387).

A way by necessity exists by grant, and the grant is an implied one.   *Nichols* v. *Luce*, 24 Pick. 102 (35 Am. Dec. 302).  The theory is that where land is sold that has no outlet the vendor grants one over the parcel of which he retains the ownership.   It results from this that a way by necessity can not be successfully claimed over the land of a stranger, and if the appellant were asserting a right of way over a stranger's land she could not succeed.   If the appellee oc-

cupies the position of a stranger, then the appellant must fail; but if he occupies the position as to her that the common grantor did before he parted with title, then she is entitled to the relief she prays. In our judgment the appellee is in the position of his grantor in so far as the question before us is concerned, and must yield the appellant a right of way. As the law implied a grant at the time the common grantor conveyed to the appellant, and as that grant was prior to the conveyance to the appellee, the latter must carry into effect his predecessor's implied grant. In *Taylor* v. *Warnaky*, 55 Cal. 350, both parties claimed, as do the parties before us, through a common grantor, and it was held that the party whose land was surrounded was entitled to a way as of necessity across the land of the other. The decision in the case referred to is sustained by the doctrine, maintained by the ancient and the modern authorities, that the original grantor grants, as appurtenant to the parcel expressly conveyed, a way which will enable his grantee to obtain access to the corporeal property expressly conveyed to him. Both the corporeal property and the incorporeal right pass from the grantor at the same time—one as the inseparable incident of the other—and a subsequent grantee must necessarily take the land conveyed to him subject to the burden created by the implied grant.

Our ultimate conclusion is that the action was properly brought in the circuit court, and that such facts are stated in the complaint as require an answer.

Judgment reversed.

Filed April 23, 1890.