

I N   T H E

# Indiana Supreme Court

Supreme Court Case No. 23S-PL-71

## Jason Morehouse and Sarah Morehouse,
*Appellants,*

—v—

## Dux North LLC,
*Appellee.*



FILED

Feb 08 2024, 11:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Argued: May 4, 2023 | Decided: February 8, 2024

Appeal from the Hamilton Superior Court No. 6
No. 29D06-2010-PL-7042
The Honorable Gail Bardach, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-PL-664

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices Massa, Goff, and Molter concur.

**Slaughter, Justice.**

Plaintiff, Dux North LLC, owns landlocked property in rural Hamilton County, Indiana. To access its property, Dux seeks an implied easement over adjacent property owned by Defendants, Jason and Sarah Morehouse. An easement is an interest in land that entitles the owner to use another's property for a specific purpose. An implied easement arises not from the parties' expressed intent in a land transaction but from circumstances inferred from their transaction. Here, Dux claims as alternative relief either an implied easement by prior use or an implied easement of necessity over the Morehouse property.

We clarify our precedent to hold, first, that despite their similarities, the implied easements at issue here are conceptually different. For an implied easement by prior use, the claimed servitude must predate the severance creating the separate parcels. For an implied easement of necessity, in contrast, the claimed necessity need arise only at severance and not before. Thus, Dux can seek relief under either implied easement, and the failure of one such easement does not necessarily defeat the other. And we hold, second, that an implied easement of necessity requires a showing that access to property by another means is not just impractical but impossible. We reverse and remand.

I

A

Dux's property consists of three contiguous parcels—parcels 3, 4, and 5 in the picture below—with no access to a public road. The Morehouse property consists of parcels 1 and 2 and contains a private road that runs across the property to parcel 3.

The relevant chronology begins in 1991. In that year, Maurice and Gwendolyn Marshall owned parcels 1, 2, and 3 as a unitary tract. In April 1991, the Marshalls conveyed parcel 3 to Shorewood Corporation. This conveyance disconnected parcel 3 from the public road abutting parcel 1. The conveyance also linked parcel 3 to Shorewood's adjoining property, which included parcels 4 and 5 and the so-called "southern tract". The southern tract is the area below parcel 5 and to the west of Little Cicero

Creek. A public road abuts the southern tract. Parcels 3, 4, and 5—now owned by Dux (pronounced "ducks")—were not landlocked until 1993, when Shorewood conveyed the southern tract to North Star Construction & Development, Inc.

Before 2018, Dux accessed parcel 3 through a private road on parcels 1 and 2 with the Marshalls' permission. After a series of conveyances, parcels 1 and 2 are now owned by the Morehouses, who in 2020 denied Dux permission to use the private road, citing increased usage and Dux's lack of legal right to cross the Morehouse property.



B

The denial of access over the private road prompted Dux to sue the Morehouses. Dux sought a declaratory judgment that an implied

easement of necessity was established in 1991 when the Marshalls conveyed parcel 3 to a new owner, thus severing the ownership of parcel 3 from parcels 1 and 2, which the Marshalls still owned. According to Dux, this severance created an implied easement of necessity over the private road on parcels 1 and 2 to benefit parcel 3.

Dux moved for summary judgment, arguing that in 1991 the only practical means of accessing parcel 3 was the private road on parcels 1 and 2, and thus an easement was **reasonably** necessary. The Morehouses responded with their own motion for partial summary judgment. In support, they designated evidence that parcel 3 was part of a contiguous tract with access to a public road in 1991. Specifically, they claimed that Dux does not have an easement of necessity because when parcel 3 was severed from parcels 1 and 2, parcel 3 had access to a different public road over a different route—through contiguous parcels 4, 5, and the southern tract. Thus, the Morehouses claim, an easement over parcels 1 and 2 was not **strictly** or **absolutely** necessary in 1991.

Without challenging this evidence, Dux designated its own evidence that accessing parcel 3 from the public road along the southern tract was not practical. No road connected parcel 3 to the public road abutting the southern tract. The border between parcels 3 and 4 is about twenty-eight-feet wide and sits on a forested ravine with a nearly seven-foot elevation difference from one end to the other. A route from parcel 4 to the southern tract must pass through dense forest and two small creeks. The border between parcel 5 and the southern tract is on a steep ravine, and crossing the border requires traversing another creek. Parcels 4 and 5, which border Little Cicero Creek, are designated wetlands by the United States Fish and Wildlife Service. Wetlands adjacent to traditional navigable waters and their tributaries are regulated under the federal Clean Water Act. *Sackett v. Env't Prot. Agency*, 143 S. Ct. 1322, 1336, 1339, 1341, 1347 (2023). Dux did not designate evidence to show Little Cicero Creek is navigable or a tributary to navigable water. If parcels 4 and 5 are regulated wetlands, then Dux may need a permit to place any fill material on the wetlands to build a road. See *id.* at 1331.

The trial court concluded that Dux had an implied easement by prior use and did not address whether it also had an implied easement of necessity. The court granted Dux's summary-judgment motion and denied the Morehouses' motion. It found, among other things, that the Morehouses admitted the prior use had been obvious and permanent since the land was severed in April 1991. It also declared an easement in favor of parcel 3 over parcels 1 and 2 and found the easement is at least twenty feet wide. To enable an immediate appeal, the court's written order expressly determined there was no just reason for delay and expressly directed the entry of judgment as to these claims and issues.

The Morehouses then appealed. They challenged the grant of summary judgment for Dux, the denial of their own motion for partial summary judgment, and the declaratory judgment creating the implied easement. The court of appeals reversed both summary-judgment rulings and remanded for further proceedings. *Morehouse v. Dux N. LLC*, 196 N.E.3d 704, 705, 711 (Ind. Ct. App. 2022). It concluded that Dux did not have an implied easement of necessity, and that more facts were needed on whether it had an implied easement by prior use. *Id.* at 711.

Dux then sought transfer, which we granted, 205 N.E.3d 203 (Ind. 2023), thus vacating the appellate opinion, Ind. Appellate Rule 58(A).

II

Under Indiana law, easements may arise by grant, prescription, or implication. Unlike express easements, which are specifically granted in a deed or written contract, *Shandy v. Bell*, 189 N.E. 627, 630 (Ind. 1934), and prescriptive easements, which arise from an ongoing trespass of property for at least twenty years, *Wilfong v. Cessna Corp.*, 838 N.E.2d 403, 405 (Ind. 2005), the proposed easements at issue here are implied easements. Implied easements are those that courts engraft onto a land transaction in certain circumstances to accomplish some overriding goal the parties could have expressly provided for themselves but did not. See *Shandy*, 189 N.E. at 630–31. Under the statute of frauds, conveyances of real estate must be in writing. *Brown v. Branch*, 758 N.E.2d 48, 51 (Ind. 2001). Implied easements are disfavored because they are in derogation of the rule that

the written instruments express the parties' intent. See *Shandy*, 189 N.E. at 631.

Although implied easements are disfavored, courts have offered varying justifications for implying such easements in law. One is that courts are merely inferring what **must** have been the intention of the parties to the transaction—that the parties surely would have included an easement providing ingress and egress to landlocked property had they considered it. See *Ritchey v. Welsh*, 48 N.E. 1031, 1032 (Ind. 1898). Another justification is that landlocked property has little or no value because it is inaccessible, and courts must imply an easement to ensure that land remains productive even if the parties to the transaction did not provide for such access. See, e.g., *Carroll v. Meredith*, 59 S.W.3d 484, 491 (Ky. Ct. App. 2001).

The two implied easements at issue here are easements by prior use and easements of necessity. Dux's complaint specifically sought a declaration that it has an implied easement of necessity over an existing access road on the Morehouse property. And at the summary-judgment stage, Dux argued that it also has an implied easement by prior use. As explained below, the two implied easements are distinct. We find Dux has not shown it has an easement by prior use. And the Morehouses have shown Dux has no easement of necessity as a matter of law.

A

Early Indiana cases were often imprecise and unclear in outlining the elements and contours of these two easements. Our cases sometimes described these implied easements interchangeably, while at other times treating them as distinct. For instance, in *Shandy v. Bell*, we cited both easement-by-prior-use and easement-of-necessity cases while calling the easement one of reasonable necessity. 189 N.E. at 630–31. But we applied an easement-of-necessity standard in *Logan v. Stogdale*, 24 N.E. 135, 137 (Ind. 1890), and a prior-use standard in *John Hancock Mutual Life Insurance Co. v. Patterson*, 2 N.E. 188, 191 (Ind. 1885). The resulting confusion demands that we resolve first the threshold question whether these two claimed easements—of necessity and by prior use—are separate and distinct or whether they are one and the same. We hold that these

easements, though similar, are conceptually different. Thus, a claimant may seek implied-by-law access to landlocked property in connection with either or both claimed easements. The defeat of one such easement does not mean the other necessarily fails.

The key difference between these two implied easements turns on whether the proposed easement was previously used to access the property. In other words, an easement by prior use presupposes what its name implies—that a preexisting use of property before severance of the parcels must continue to ensure access to what becomes (upon severance) a landlocked parcel. *Id.* at 192–93. In contrast, an easement of necessity arises upon severing the parcels to ensure access to a landlocked parcel, whether or not the proposed route had previously been used to access the parcel. *Logan*, 24 N.E. at 137.

B

Having resolved the threshold question that the two easements are distinct claims, we turn next to whether Dux has either an easement by prior use or one of necessity. We hold that issues of fact remain on whether Dux has an easement by prior use because the parties designated conflicting evidence on whether the private road was in use at the time of severance. And we hold that Dux does not have an easement of necessity as a matter of law because parcel 3 was not legally landlocked when it was severed from parcels 1 and 2.

1

Based on our cases, we discern two tests for these implied easements. We begin with easements by prior use. For these easements, the owner of the dominant estate must prove that (1) the land was once commonly owned; (2) the common owner imposed a servitude (easement) on part of the land to benefit another part; (3) the servitude was permanent and obvious; (4) the land was eventually severed (meaning the common owner transferred part of the land to another owner); (5) at severance the servitude remained in use; and (6) at severance the servitude was needed to enjoy the dominant estate (the parcel that the easement benefits; in contrast to the servient estate, which is the parcel the easement burdens)

in substantially the same condition. *John Hancock*, 2 N.E. at 191. If the claimant fails to establish any of these elements, the proposed easement by prior use fails.

To justify implying an easement upon land where the deed is silent, the owner of the dominant estate must show more than that the proposed easement is convenient or beneficial to the future use and enjoyment of the land. *Id.* at 191–92. It must appear both that the servitude is necessary to such future use and enjoyment and that the common owner (before severance) intended by his servitude to adopt a permanent and obvious use. *Ibid.* This latter showing justifies implying an easement at all despite no express easement in the deed. See generally 11 Ind. L. Encyc. *Easements* § 8 (2018).

In its summary-judgment motion, Dux designated evidence that the access road across parcels 1 and 2 was an obvious servitude dating to the 1980s that remained in place in April 1991 when the Marshalls sold parcel 3 to Dux—when, that is, parcel 3 was severed from parcels 4 and 5 and the southern tract. The trial court found that the Morehouses answered the Dux complaint by admitting the servitude existed at severance. But the appellate court rejected this argument, explaining that the Morehouses' answer admitted only that the "Marshalls had 'freely allowed the owners' of Parcel 3 to use the access road 'in order to access the Dux North Preserve . . . at all times **from 1991** until Gwendolyn Marshall's death in 2018[.]'" 196 N.E.3d at 710 (ellipsis and emphasis in original). "We believe", the appellate court held, that "Dux North's interpretation of that admission is too broad." *Id.* at 711. The court continued, observing that the term "from 1991" did not necessarily admit that the disputed road was "in use" on the "critical date" in April 1991:

> The Morehouses' admission that the access road had been in use "from 1991" could mean any date between January 1, 1991, and December 31, 1991. But the critical date is the date of severance in April 1991, and there is no designated evidence

that shows that the access road was definitively "in use" at that time.

*Ibid.* We agree.

And we note that the trial court's finding that the servitude was in use at severance is the Morehouses' primary basis on appeal for objecting to the judgment below as to the prior-use easement. Notably, the Morehouses do not contest that the access-road servitude across their property is necessary to Dux's use and enjoyment of parcel 3 in substantially the same condition as before severance. In addition to their primary objection, the Morehouses also argue that Dux waived its claim for a prior-use easement in the trial court. We reject the waiver argument because Dux's complaint pleaded all facts necessary to state a claim for such an easement, and Dux raised the prior-use easement before the trial court during summary-judgment proceedings. On remand, if the trial court finds that such an easement exists, the court will need to revisit its prior determination that the "right of way shall extend no less than ten (10) feet in each direction from the center line of said unpaved access road." We find nothing in the record to support the court's conclusion that the purported easement is at least twenty feet wide.

2

Next, we consider implied easements of necessity. Unlike prior-use easements, easements of necessity do not require that a way of necessity exist **before** severance. Indeed, the propriety of such an easement— whether the proposed route is necessary for joining the dominant estate with a public road—is not assessed **until** severance.

To establish an easement of necessity, the owner of the dominant estate must prove that (1) the servient and dominant properties had a common owner (unity of ownership); (2) the unity of ownership was severed when the common owner conveyed one of the parcels (severance); (3) this severance made an easement necessary for the owner of the dominant estate to access a public road (necessity at severance); and (4) the easement's necessity remained after severance (continuing necessity). See

*Dudgeon v. Bronson*, 64 N.E. 910, 910 (Ind. 1902); *William C. Haak Tr. v. Wilusz*, 949 N.E.2d 833, 836 (Ind. Ct. App. 2011).

The first two elements are not in dispute here—the Marshalls had unity of ownership over parcels 1, 2, and 3, and this unity was severed in April 1991 when the Marshalls conveyed parcel 3 to Shorewood, which owned parcels 4 and 5 and the southern tract. The only disagreement concerns the third and fourth elements—whether necessity existed at severance and continued thereafter to justify creating an easement over parcels 1 and 2 in favor of parcel 3.

The central issue here is the degree of necessity required to establish an easement of necessity. This is an issue of law we review de novo. *Town of Ellettsville v. DeSpirito*, 111 N.E.3d 987, 990 (Ind. 2018). The parties ask us to choose between reasonable necessity, on one hand, and strict or absolute necessity, on the other. We decline to adopt either and instead focus on the term "necessity" itself. We hold that courts will imply an easement of necessity only when the parcel is legally landlocked. In applying this standard, we find that Dux has no easement of necessity because parcel 3 had access to a public road at the time of severance.

a

Indiana courts have been all over the map describing just how much necessity is, well, necessary. We have sometimes required "strict" (or "absolute") necessity, *Dudgeon*, 64 N.E. at 910, and at other times seemed to require only "reasonable" necessity, *Shandy*, 189 N.E. at 631. Our early cases, especially, were inconsistent both in announcing a clear standard and in explaining whether the announced standard applied to in-use or of-necessity easements, or both. Dux, for example, argues that *Shandy* abrogated prior case law and imposed reasonableness as the governing standard for implied easements of necessity. We are not so sure. *Shandy*'s facts and the cases it cites have many earmarks of easements by prior use.

Indiana has not been alone in generating such uncertainty. As courts elsewhere have noted, these rival labels—"reasonable" versus "strict" (or "absolute") necessity—often mean **less** in practice than meets the eye. As Pennsylvania's supreme court recently observed, an Idaho appellate court

purported to adopt a "reasonable necessity" standard but acknowledged that "the criteria for determining 'reasonable' necessity . . . could not easily be distinguished from those we had postulated for 'strict' necessity." *Bartkowski v. Ramondo*, 219 A.3d 1083, 1093 n.12 (Pa. 2019) (ellipsis in original) (quoting *MacCaskill v. Ebbert*, 739 P.2d 414, 419 n.3 (Idaho Ct. App. 1987)). Pennsylvania's highest court continued, explaining there is little difference between the two standards in practice:

> This sentiment is expressed as well by leading treatise writers, who posit that the difference between the two standards is "greater in theory than in practice," and that "[a]n examination of decisions in this area reveals that, in many cases, the court would reach the same result under either degree-of-necessity test."

*Ibid.* (quoting Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 4:10 (March 2019 Update)).

We find much practical wisdom in these observations. And so, to provide greater clarity to landowners and lower courts that must abide and apply our standard, we ditch adjectives like "reasonable", "strict", and "absolute" from our tests of necessity. Instead, we focus on the term "necessity" itself, which means essential or indispensable. *Necessity*, Merriam-Webster-Online Dictionary, https://perma.cc/6M2Y-M7TD (citing *Necessary*, Merriam-Webster-Online Dictionary, https://perma.cc/783P-RUWD). In other words, an easement of necessity arises if the easement is essential (or indispensable) for the owner of the dominant estate to access a public road. An easy case is where the affected parcel is landlocked—surrounded by other properties—so there is no means of ingress and egress. *Logan*, 24 N.E. at 136. In such cases, courts will imply an easement of necessity to enable access between the dominant estate and a public road. *Id.* at 137.

A harder case is what we face today. At the April 1991 severance, parcel 3 did not become **legally** landlocked. Parcels 3, 4, and 5, and the southern tract were all contiguous parcels then, and the southern tract adjoins a public road. Under these circumstances, the Morehouses argue, it was not

"necessary" at severance to imply an east-west easement over parcels 1 and 2 since a north-south route was available to access parcel 3 from a different public road.

Dux acknowledges that parcel 3 may not be landlocked legally, but it says the parcel is landlocked functionally. There is no practical means of access, Dux contends, given the rough terrain, the topography, and the wetlands between parcel 3 and the southern tract. Because parcel 3 is **practically** landlocked, according to Dux, we must imply an easement of necessity over parcels 1 and 2. Thus, the issue before us is whether necessity can ever be met when a public road abuts the property directly or through contiguous parcels.

Courts have used two approaches for dealing with practically landlocked parcels—theoretically accessible to/from a public road, but not practically so. And we note that each approach has its own merits and demerits. Jon W. Bruce, James W. Ely, Jr., & Edward T. Brading, *The Law of Easements & Licenses in Land* § 4:10 (2023-1 ed.). One approach is to draw a clear line in the sand and hold that the law will imply an easement of necessity only for truly (legally) landlocked parcels—those that are circumscribed by others' property—but for no other parcels. The other approach is to imply an easement of necessity even for parcels abutting a public road if it would be cost-prohibitive for the owner of the dominant estate to build an alternate route to a portion of its parcel. Because the former better realizes parties' expressed intent by narrowing when we imply easements, and the latter results in significant costs and discourages the parties' private, negotiated resolution, we adopt the former.

i

The approach we adopt today recognizes an implied easement of necessity only when land is legally landlocked with no public road abutting contiguous property. The result may seem harsh (especially to the owner of the isolated parcel), but the upside is that the rule is easy to apply, and it avoids having courts rewrite parties' written agreements by imposing a term (guaranteeing access) they could have included themselves but did not.

When assessing the rights of a party to a contract for real property, courts must enforce the parties' intent as expressed in the written deeds. *Shandy*, 189 N.E. at 631. An easement of necessity gives effect to the "presumed intent of the parties". *Ritchey*, 48 N.E. at 1032. The law presumes parties intend that one convey land to the other in a manner enabling both parties to use their land productively. *Id.* at 1032–33. Necessity is evidence of that intent. *Shandy*, 189 N.E. at 630–31. But because an easement of necessity counters the written language in a deed, our precedents grappling with the meaning of necessity have consistently held that the degree of necessity must be more than convenient or beneficial. *Id.* at 631. If the owner can access the land another way, there is no necessity. *Ibid.* The mere fact that an "alternate means of access would be more difficult or expensive for the plaintiff" does not amount to necessity. *Cockrell v. Hawkins*, 764 N.E.2d 289, 293 (Ind. Ct. App. 2002). Despite the often ambiguous and confusing language of our case law on easements of necessity, on these points we have always been clear.

We observe that two of our neighboring states—Michigan and Ohio—require that property be legally landlocked before implying an easement of necessity. *Waubun Beach Ass'n v. Wilson*, 265 N.W. 474, 478–79 (Mich. 1936); *Trattar v. Rausch*, 95 N.E.2d 685, 690 (Ohio 1950). Ohio's supreme court holds it will not find necessity even if the "other outlets are less convenient and would necessitate the expenditure of a considerable sum of money to render them serviceable." *Trattar*, 95 N.E.2d at 690. And Michigan's supreme court holds that no easement exists when there is a "right of access thereto from the street", and "[t]here is no intervening property." *Burling v. Leiter*, 262 N.W. 388, 392 (Mich. 1935). We agree with the Michigan court's reasoning that under "any other rule", "we open the door to doubt and uncertainty, to the disturbance and questioning of titles, and to controversies as to matters of fact outside the language of the deed." *Id.* at 391. Under Dux's proposed rule, in other words, "the sanctity and security of titles by deeds, exact and precise in their terms, would be seriously shaken and impaired." *Ibid.*

We thus reject Dux's proposed rule, which would require courts to imply an easement of necessity when an alternate route for accessing land is merely impracticable. To be sure, this approach would enable the owner of the dominant estate to access its parcel and may enhance the parcel's value. The downside to this approach, though, is that implying an easement in these circumstances is not without cost. And the costs can be considerable. One is that these corresponding benefits and burdens are often a zero-sum game. For every owner of a dominant estate benefited when the law implies such an easement, the owner of the servient estate is burdened by it. And because the easement is implied, it arises without the consent of the servient-estate owner.

This approach imposes a further set of costs, and that is the cost of litigating these easement disputes. Litigation is expensive and often uncertain. How a court or jury will react to particular facts or legal arguments can be anyone's guess. And that is especially true when the governing legal "standards" (such as they are) are murky at best. This area of the law, especially, is rife with standardless "standards", which mean whatever a court's majority says they mean.

Consider how Pennsylvania's supreme court approaches this issue. The court rejected a proposed clear, bright-line rule that would have implied an easement of necessity only for truly (legally) landlocked parcels. *Bartkowski*, 219 A.3d at 1093. Instead, the court adopted a test asking whether constructing alternate access would be "manifestly impracticable, even though theoretically possible". *Id.* at 1094. Just one of the factors informing this inquiry is the expense of building alternate access. Quoting Maryland's highest court, the Pennsylvania court described the standard as whether alternate access to a public road "would require unreasonable expense out of proportion to the value of the land". *Ibid.* (quoting *Condry v. Laurie*, 41 A.2d 66, 68 (Md. 1945)). As the court explains, the inquiry is "fact-intensive" and "defies a one-size-fits-all, bright-line standard." *Id.* at 1096. Instead, the inquiry is multifaceted and informed by "multiple factors":

Each case will require individualized consideration of multiple factors, including, but not limited to: the existence of zoning restrictions and the likelihood that the party can obtain the necessary variances or exceptions; the existence of state or federal regulations that prohibit certain uses of the land in question; the topography of the land and the practicability of constructing alternative access; the environmental consequences of construction; the costs involved; and, of course, whether and to what extent these impediments existed at the time of severance.

*Ibid.*

As the Pennsylvania court explains, this list of "multiple factors" is "non-exclusive". *Ibid.* The reason: "future cases may well present **additional** circumstances relevant to the establishment of necessity." *Ibid.* (emphasis added). The party claiming necessity will often have to rely on expert testimony to prove that "any legal or physical barriers cannot or are exceedingly unlikely to be overcome." *Ibid*. And both the weight and credibility to be afforded such testimony "are matters that we entrust to the discretion of the fact-finder." *Ibid.*

This amalgam of factors informing the necessity analysis, the court notes, is "intended only to guide courts in navigating the 'gray area' between sheer impossibility and mere convenience." *Ibid*. As the court observes, the take-away from all this—the only part of the discussion that is not "gray" but crystal clear—is that "the presence of one or more, or even all, of the above-listed circumstances" does not "automatically establish[] . . . necessity." *Ibid.* In other words, the particulars of a given case may establish necessity. Or they may not.

Such a highly fact-bound, multi-factor balancing test is not susceptible to—but the opposite of—clear line-drawing. In practice, litigants subject to such a test will never be sure what a given set of circumstances means in each case until a court—likely an appellate court—has weighed in. We eschew any such holistic test of necessity in favor of a straightforward, bright-line rule: A court will imply an easement of necessity only if the

parcel is truly landlocked, meaning it has no legal access to (or from) a public road.

The costs associated with the alternative multi-factor approach discourage extralegal bargaining—where parties contract around existing rules to achieve an outcome suitable to both sides. Parties are more likely to negotiate when faced with bright-line rules than with ambiguous rules that make it unclear when the law applies and whom it favors. *Town of Ellettsville*, 111 N.E.3d at 996. "[C]ertainty in the law is the antidote to litigation". Douglas H. Ginsburg, *Bork's "Legislative Intent" and the Courts*, 79 Antitrust L. J. 941, 950 (2014). With straightforward legal rules, neighbors can more readily assess whether one has an easement of necessity over another's land. In those cases, the parties know their respective legal rights and can negotiate beneficial contract terms for property access accordingly. Low transaction costs for such two-party negotiations facilitate productive bargaining and make private resolution more likely. See generally R. H. Coase, *The Problem of Social Cost*, 3 J. L. & Econ. 1 (1960).

But if property rights are unclear, the incentive on both sides, as seen here, is to resort to courts to assess competing values and define reasonable costs en route to deciding whose property rights prevail in a given case. As Judge Posner observes, "vague standards beget disputes that require litigation . . . to resolve." Richard A. Posner, *Economic Analysis of Law* 490 (8th ed. 2011). Not only do courts have limited institutional competence with such tasks, but even our best efforts are unlikely to consistently strike the right balance between competing claims for and against access to disputed property. Here, there is presumably some price at which the Morehouses will tolerate increased traffic across parcels 1 and 2 so Dux can access parcel 3. We think it better that the parties make these choices through private negotiations than for courts to impose such access (in the form of an implied easement) based on imprecise, hard-to-apply rules.

b

Here, at severance in April 1991, parcel 3 had access to a public road by two routes: (1) a private, east-west road over the Morehouse property; and

(2) a north-south route over contiguous property to the southern tract consisting of ravines, creeks, dense forest, and regulated wetlands. Dux cannot meet its burden to show an easement of necessity was established because at the time of severance, parcel 3 was contiguous to property abutting a public road.

Indeed, the Morehouses' designated evidence shows that Dux does not have an easement of necessity over their property as a matter of law. A public road abuts the southern tract, and Shorewood owned contiguous property including the southern tract at the time of parcel 3's conveyance in 1991. This evidence is enough to defeat Dux's claim for an easement of necessity. It matters not that building a road between parcel 3 and the southern tract would be expensive, difficult, or inconvenient, as Dux argues. Nor does it matter that Dux's property is currently landlocked. The necessity for the easement must exist at the time of severance. *State v. Innkeepers of New Castle, Inc.*, 392 N.E.2d 459, 464 (Ind. 1979). The Morehouses are thus entitled to judgment that Dux has no easement of necessity over their property.

\*        \*        \*

For these reasons, we reverse the trial court's judgment granting Dux's motion for summary judgment on the easement-by-prior-use claim and denying the Morehouses' motion for partial summary judgment on the easement-of-necessity claim. We also reverse the declaratory judgment establishing an implied easement by prior use over the Morehouse property. And we remand to the trial court with instructions (1) to enter judgment for the Morehouses on Dux's claim for an implied easement of necessity and (2) to decide whether Dux has an easement by prior use over the Morehouse property.

Rush, C.J., and Massa, Goff, and Molter, JJ., concur.

ATTORNEY FOR APPELLANTS JASON MOREHOUSE AND SARAH MOREHOUSE

Zechariah D. Yoder

Adler Attorneys

Noblesville, Indiana

ATTORNEYS FOR APPELLEE DUX NORTH LLC

Thaddeus J. Schurter

Alexander C. Trueblood

Christopher S. Drewry

Drewry Simmons Vornehm, LLP

Carmel, Indiana